**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| TORRELL J.,[1] | Case No. 2:23-cv-01251-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| KILOLO KIJAKAZI, | |
| Defendant. | |

This case involves review of an administrative action by the Commissioner of Social Security denying Torrell J.'s application for disability benefits under Title II and Title XVI of the Social Security Act. The Court reviewed Plaintiff's Motion for Reversal and/or Remand (ECF No. 8), the Commissioner's Cross-Motion to Affirm and Response (ECF Nos. 10 and 11), and Plaintiff's Reply (ECF No. 12). For the reasons discussed below, the Court grants Plaintiff's Motion and remands for further proceedings.

## I.    BACKGROUND

On January 25, 2020, Plaintiff filed for disability insurance benefits under Title II of the Social Security Act as well as supplemental security income under Title XVI, alleging an onset date of November 15, 2017. ECF No. 23-1 at 173.[2] Plaintiff's claim was denied initially and upon reconsideration. *Id.*

A telephonic hearing was held before Administrative Law Judge ("ALJ") Cynthia R. Hoover on June 9, 2021. *Id.* On July 9, 2021, ALJ Hoover found that Plaintiff was not disabled. *Id.* at 187. Plaintiff appealed that decision to the Appeals Council, which granted his request and remanded for further proceedings. *Id.* at 23.

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

[2] ECF No. 23 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. All citations to the Administrative Record will use the CM/ECF page numbers.

1   ALJ Hoover held a supplemental hearing on January 31, 2023. *Id.* On February 21, 2023,

2   ALJ Hoover found that Plaintiff was disabled from December 29, 2022, but not prior to that date.

3   *Id.* at 38–39. Plaintiff appealed that decision to the Appeals Council, which denied his request for

4   review on June 23, 2023. *Id.* at 7. Plaintiff then commenced this action for judicial review under

5   42 U.S.C. § 405(g) on August 11, 2023. *See* ECF No. 1.

6   **II.   STANDARD OF REVIEW**

7   Administrative decisions in Social Security disability-benefits cases are reviewed under

8   42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g)

9   provides that "[a]ny individual, after any final decision of the Commissioner of Social Security

10   made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may

11   obtain a review of such decision by a civil action. . . brought in the district court of the United

12   States for the judicial district in which the plaintiff resides." The Court may enter "upon the

13   pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

14   decision of the Commissioner of Social Security, with or without remanding the cause for a

15   rehearing." 42 U.S.C. § 405(g).

16   The Commisioner's findings of fact are conclusive if supported by substantial evidence.

17   *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's

18   findings may be set aside if they are based on legal error or not supported by substantial

19   evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas*

20   *v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as

21   "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

22   reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d

23   1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

24   2005). In determining whether the Commissioner's findings are supported by substantial

25   evidence, the Court "must review the administrative record as a whole, weighing both the

26   evidence that supports and the evidence that detracts from the Commissioner's conclusion."

27   *Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273,

28   2

1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the issue before the Court is not whether the Commissioner could have reasonably reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

## A. Disability evaluation process and the ALJ decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual also must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a

1   determination will be made, and no further evaluation is required. *See* 20 C.F.R.

2   § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

3        Step one requires the ALJ to determine whether the individual is engaged in substantial

4   gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the

5   ALJ will make a finding of non-disability. If the individual is not engaged in SGA, then the

6   analysis proceeds to step two.

7        Step two addresses whether the individual has a medically determinable impairment that

8   is severe or a combination of impairments that significantly limits her from performing basic

9   work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically

10  determinable impairment or combination of impairments, then the ALJ makes a finding of non-

11  disability. If the individual has a severe medically determinable impairment or combination of

12  impairments, then the analysis proceeds to step three.

13       Step three requires the ALJ to determine whether the individual's impairments or

14  combination of impairments meets or medically equals the criteria of an impairment listed in 20

15  C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment

16  or combination of impairments meets or equals the criteria of a listing and the duration

17  requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). Otherwise, the

18  analysis proceeds to step four.

19       However, before moving to step four, the ALJ must first determine the individual's

20  residual functional capacity ("RFC"), which is a function-by-function assessment of the

21  individual's ability to do physical and mental work-related activities on a sustained basis despite

22  limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this

23  finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to

24  which the symptoms can reasonably be accepted as consistent with the objective medical

25  evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the

26  intensity, persistence, or functionally limiting effects of pain or other symptoms are not

27  substantiated by objective medical evidence the ALJ must make a finding on the credibility of

28                                                          4

the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. The work also must have lasted long enough for the individual to learn the job and to have performed an SGA. If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then the ALJ makes a finding of non-disability. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

*Here*, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 15, 2017, the alleged onset date. ECF No. 7-1 at 26.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: arthropathy, dysfunction of major joints, degenerative disc disease, hernias, migraine, anxiety, and depression. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 27.

Before moving to step four, the ALJ concluded that Plaintiff had the RFC to perform sedentary work but with the following limitations:

the claimant can only frequently stop, kneel, crouch, crawl, and climb ramps and stairs, never climb ladders, ropes, and scaffolds, can only frequently push and pull with the left upper extremity, can frequently reach overhead, can have only occasional exposure to concentrated exposure to extreme temperatures and hazards such as dangerous moving machines, such as chainsaws and jackhammers, and unprotected heights. The claimant can understand, remember, and carry out simple, routine tasks with the ability to concentrate, persist, and maintain pace for such tasks, and can interact occasionally with the public. The claimant requires the use of a can for ambulating long distance or on uneven terrain.

*Id.* at 29.

At step four, the ALJ found that Plaintiff could not perform his past PRW as a building maintenance repairer, home restoration cleaner, or construction worker I. *Id.* at 36.

At step five, the ALJ found that prior to December 29, 2022—the date Plaintiff's age category changed—given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed, namely as a table worker, charge account clerk, and lampshade assembler. *Id.* at 37–38. But the ALJ also found that after Plaintiff's age category changed, there are no jobs that exist in significant numbers in the national economy that he could perform. *Id.* at 38. The ALJ then concluded that Plaintiff was not under a disability prior to December 29, 2022, but he became disabled on that date onward. *Id.*

III.    **ANALYSIS**

   A.  **The ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony**

The parties dispute whether the ALJ provided specific, clear, and convincing reasons in discounting Plaintiff's subjective symptom testimony. *Compare* ECF No. 8 at 9–14 *with* ECF Nos. 10 and 11 at 5–13.

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* (internal citation and quotation omitted). The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).

If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering specific, clear, and convincing reasons for doing so." *Id.* (internal citation and quotation omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (citation omitted); *Thomas,* 278 F.3d at 958 (requiring the ALJ to sufficiently explain why they discounted the claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms. ECF No. 7-1 at 34. However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported." *Id.* The ALJ cited daily activities, medical opinion testimony, conservative treatment, and objective medical evidence to discount Plaintiff's symptom testimony. *Id.* at 29–36. The Court addresses each in turn.

### 1.   *Daily Activities*

The ALJ discounted Plaintiff's symptom testimony, in part, because she found that his "reported activities and abilities were not fully consistent with a finding of disability." ECF No. 7-1 at 35. Plaintiff argues that the ALJ mischaracterized the extent of his daily activities

because she failed to contextualize the frequency with which he performed them. ECF No. 8 at 10–13. He also claims that the ALJ was required to make specific findings as to how his daily activities were transferable to employment but failed to do so. *Id.* at 12–13. The Commissioner responds that Plaintiff's daily activities constitute a sufficient reason to discredit his testimony because they were inconsistent with other parts of his testimony, and they contradict the claimed extent of Plaintiff's impairment. ECF No. 10 at 10–11. But Plaintiff counters that because the ALJ did not explain why Plaintiff's daily activities were inconsistent with his testimony, the Commissioner cannot pull post hoc rationalizations from the record to justify the ALJ's decision. ECF No. 12 at 5.

A plaintiff can be found disabled even if he is able to perform some activities of daily living. *See Garrison*, 759 F.3d at 1016. However, inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for discrediting symptom testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (citation omitted). In making that determination, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (citation omitted). "To support a lack of credibility finding, the ALJ [is] required to point to *specific facts* in the record." *Id.* (citation omitted) (emphasis in original).

Here, the ALJ did not state that Plaintiff's daily activities were inconsistent with his testimony, but instead found that his "reported activities and abilities were not fully consistent *with a finding of disability*." ECF No. 7-1 at 35 (emphasis added). The ALJ also did not identify any particular inconsistencies or how Plaintiff's reported daily activities undermined his testimony. Instead, the ALJ's discussion of Plaintiff's daily activities is akin to the situation in *Burrell*, where the Ninth Circuit explained:

> But the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony. . . . Instead, the government identifies other alleged inconsistencies between Claimant's hearing testimony and her reported daily activities, such as knitting and lace work. But the ALJ did not identify those inconsistencies. We are constrained to review the reasons the ALJ asserts. Our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to

doctors—and comb the administrative record to find specific conflicts.

775 F.3d at 1138 (internal quotations and citations omitted) (emphasis in original). So although the Commissioner identified supposed inconsistencies in his briefing, because the ALJ did not articulate such inconsistencies, this is not a specific, clear, and convincing reason for discrediting Plaintiff's testimony. *Id.*

However, an ALJ can also discredit a claimant's testimony when the claimant reports participation in activities that are "inconsistent with the alleged severity of [his] limitations." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 112–13 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a) (citations omitted).

Here, the Commissioner contends that Plaintiff's daily activities "are relevant in that they are inconsistent with Plaintiff's extreme allegations." ECF No. 10 at 11. In her opinion, the ALJ noted that Plaintiff reported "being able to perform a wide range of daily activities," including tending to his personal care and hygiene, managing his medications, setting up an appointment calendar and pill organizer, preparing meals, driving, doing laundry, washing dishes, going to church, socializing with family members, going out to dinner and drinks with friends, attending his children's sporting games and practices, and exercising at the gym. ECF No. 7-1 at 35.

But again, "[o]nly if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722. And here, simply listing Plaintiff's daily activities devoid of context does not substantiate such a finding. *Id.* at 722–23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports."). Both Plaintiff and his wife reported that he cannot bathe himself and needs help dressing himself. ECF No. 7-1 at 496, 505. In the limited circumstances that Plaintiff does prepare a meal—since he typically eats whatever his wife cooks for him—he must sit on a stool while cooking. *Id.* at 65, 95, 506.

While he can occasionally do laundry (once a week) and dishes (once every few days), he still needs help completing such chores because doing laundry on his own, for example, takes him almost the entire day. *Id.* at 497, 506. Though Plaintiff used to drive his son to and from school, he no longer does so, and there was no context for how long or how far Plaintiff had to drive when he did. *Id.* at 59. Similarly, there was no context regarding how often, how long, or what Plaintiff had to do to participate in attending church or his son's practices, which he no longer attends. *Id.* at 502. And when properly contextualized, Plaintiff's ability to go to "dinner and drinks with friends" is limited to "every now and then" if a family member is in town, but "they understand that [he] has issues so they don't usually bother [him] too much." *Id.* at 60, 96.

His management of medication and use of an appointment calendar too does not undermine the extent of his claimed limitations. The use of these aids is in direct response to his mental health limitations and his wife put these mechanisms in place because he needed the reminders. *Id.* at 502, 504, 506. And Plaintiff "goes to the gym" as part of his physical therapy treatment, and the "symptoms" that he did not "develop" refer to cardiac symptoms, not his claimed physical or mental limitations. *Id.* at 729, 748. Thus, when properly contextualized, Plaintiff's daily activities do not contradict the extent of his impairments. *Garrison*, 759 F.3d at 1016 (holding that claimant's daily activities did not undermine her testimony when properly contextualized with their limitations).

Finally, the ALJ found that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." ECF No. 7-1 at 35. The Ninth Circuit recognized that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) *superseded on other grounds by* 20 C.F.R. § 404.1502(a). "Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Id.*

"The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotations and citation omitted).

But here, the ALJ did not articulate how Plaintiff's daily activities would be transferrable to the workplace. And once contextualized with his limitations, it is not apparent that Plaintiff spends a "substantial" part of his day engaging in such activities. This therefore is not a sufficient reason to discount his testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial' portion of Ghanim's day, or were 'transferrable' to a work environment.").

### 2. *Medical Opinion Evidence*

The ALJ also considered, and found persuasive, the opinions of some state agency consultants when evaluating Plaintiff's symptom testimony. ECF No. 7-1 at 35–36. The Commissioner contends that the consultants' findings undercut Plaintiff's testimony because they found that Plaintiff could perform a reduced range of work and thus was not totally disabled. *Id.* at 12–13. But Plaintiff asserts that their findings do not undermine his testimony because while the existence of different medical opinions raises the issue of excess pain, the opinions do not resolve it. ECF No. 12 at 6.

In weighing a plaintiff's credibility, the ALJ may consider different factors, including physician testimony about the nature, severity, and effect of symptoms. *Thomas*, 278 F.3d at 958–59. "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). A recitation of the medical evidence supporting an ALJ's RFC determination is not a specific, clear, and convincing reason for rejecting a claimant's symptom testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

Here, the ALJ found state agency medical consultant Dr. Samuel Pak partially persuasive and state agency psychological consultants Drs. F. Mateus and Mark Berkowitzs persuasive.

ECF No. 7-1 at 35–36. However, the ALJ did not say that the consultants' findings undermined Plaintiff's testimony let alone identify which part of their findings was supposedly inconsistent with his claims. Instead, she noted that Dr. Pak's finding that Plaintiff can perform some work and Dr. Mateus's and Dr. Berkowitzs's findings that Plaintiff had mild to moderate limitations were supported by objective medical evidence. *Id.* But this merely amounts to a summary of the medical evidence supporting her RFC finding. *Brown-Hunter*, 806 F.3d at 494. Because the ALJ did not point to specific evidence in the consultants' findings and explain how they undermined Plaintiff's symptom testimony, this is not a sufficient reason to discredit his testimony. *Morgan*, 169 F.3d at 599.

### 3. *Conservative Treatment*

The ALJ also cited conservative treatment as a reason for discrediting Plaintiff's symptom testimony. ECF No. 7-1 at 31–33. The Commissioner asserts that this is sufficient to discount Plaintiff's claims because the ALJ found that his migraines and mental health were conservatively treated, and that Plaintiff was weaning down his pain medication following a knee injury. ECF No. 10 at 11–12. But Plaintiff challenges this notion because he claims that the ALJ's reference to conservative treatment was simply part of her discussion of objective medical evidence and its purported lack of support for Plaintiff's contentions. ECF No. 8 at 14 n.4.

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, courts have found that when there is no indication that a more aggressive treatment would be warranted, an ALJ's assertion of conservative treatment amounts to a "back door finding" that a plaintiff's statements are not fully corroborated by objective medical evidence. *See, e.g.*, *Clarke v. Astrue*, No. CV08-604-TUC-DCBBPV, 2010 WL 1540022, at *16 (D. Ariz. Mar. 31, 2010); *Palmer v. Astrue*, No. 11-CV-942 JLS BLM, 2012 WL 3779046, at *5 (S.D. Cal. Aug. 30, 2012).

Here, the ALJ noted that after reporting a knee injury in December 2020, Plaintiff began weaning down his pain medication in January 2021 from taking five pills a day, to taking just

12

one. ECF No. 7-1 at 31. Later, she concluded that his migraines were treated conservatively because there were no records of emergency room visits or the need for "aggressive or invasive" treatment. *Id.* at 34. She also found that Plaintiff's mental health treatment was conservative because there was no evidence that he "had any severe exacerbations or required hospitalization." *Id.* at 35.

But this is the equivalent of stating that Plaintiff's symptoms are not fully corroborated by the objective medical evidence. *Clarke*, 2010 WL 1540022, at *16; *Palmer*, 2012 WL 3779046, at *5. As discussed further below, the ALJ cannot solely rely on the absence of objective medical evidence to discredit Plaintiff's subjective symptom testimony. *Burch*, 400 F.3d at 680. The ALJ here did not cite any evidence in the record that suggested Plaintiff opted for conservative treatment in lieu of more aggressive treatment, or that indicated a more aggressive option was recommended or even available. *See Clarke*, 2010 WL 1540022, at *15 ("There is no indication from any of the treatment records that more aggressive treatment was foregone in favor of conservative treatment"). And the "theoretical existence of a more aggressive treatment option"—such as emergency room visits or hospitalizations—does not support a finding of conservative treatment. *Palmer*, 2012 WL 3779046, at *5. This therefore was not a specific, clear, and convincing reason for the ALJ to discount Plaintiff's testimony.

### 4.  *Objective Medical Evidence*

Finally, the ALJ pointed to the objective medical evidence as a reason for not crediting Plaintiff's testimony. ECF No. 7-1 at 34–35. Plaintiff contends that because the ALJ failed to provide other adequate reasons for discrediting his testimony, the ALJ's claim that the extent of Plaintiff's symptoms is not fully corroborated by the objective medical evidence cannot be the sole basis for discounting his testimony. ECF No. 8 at 13–14. The Commissioner responds that this was a proper reason for discrediting his testimony because the objective medical evidence was inconsistent with the testimony. ECF No. 10 at 7–9.

Plaintiff is correct that the ALJ "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*,

13

400 F.3d at 680. "This means that an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022). But "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 498 (emphasis in original).

      Here, the ALJ found that the "objective medical evidence was not fully consistent with the claimant's reported activities and abilities." ECF No. 7-1 at 34. However, in explaining such finding, the ALJ on many instances did not point to specific testimony that was undermined or contradicted by the objective medical evidence. Instead, when referring to Plaintiff's difficulty sitting and his migraines, the ALJ stated that there were "minimal" or "no" exams showing his claimed limitations. *Id.* But this simply means that the ALJ found that the objective medical evidence did not "fully corroborate" his symptoms. *Burch*, 400 F.3d at 680.

      At other points, the ALJ explained how she accounted for certain limitations in her RFC determination and stated that the objective medical evidence did "not support further limitations" or was "not consistent with a finding the claimant could not perform a reduced range of sedentary work." ECF No. 7-1 at 34. But this, again, amounts to summary of the medical evidence supporting her RFC determination, which is not a specific, clear, and convincing reason for rejecting Plaintiff's symptom testimony. *Brown-Hunter*, 806 F.3d at 494.

      On a few instances, the ALJ appeared to suggest that the objective medical evidence contradicted Plaintiff's testimony but did not identify the particular testimony nor sufficiently explain how it was contradicted by the objective medical evidence. For example, she found that the "evidence did not support a finding the claimant required continuous use of a cane" because there were some exams in which Plaintiff could walk without a cane. ECF No. 7-1 at 34. But she did not explain what Plaintiff testified and how it was belied by the evidence. This is not akin to the inconsistencies identified in *Smartt*, where the ALJ pointed to specific testimony from the claimant that she had not driven since a certain date and was unable to walk without a walker

that were directly contradicted by a report that she routinely drove a car and "multiple specific examples" of her inconsistent use of mobility aids. 53 F.4th at 497. The ALJ here did not even articulate whether Plaintiff represented that he could not walk without a cane and his testimony that he used a cane daily (which, importantly, the ALJ did not reference) is not necessarily inconsistent with the evidence because he did not explicitly state that he was *unable* to walk without a cane. *See* ECF No. 7-1 at 58.

The ALJ also found that "[d]espite reporting significant social limitations, there were many exams where the claimant presented as pleasant, friendly, cooperative, exhibited normal behavior, or had a normal mood and affect." *Id.* at 35. And she later noted that "[d]espite reporting poor memory and concentration, there were many exams where the claimant had normal thoughts, good insight and judgment, was alert and attentive, and intact memory, attention, and concentration." *Id.* But these contentions suffer the same defect as the above example in that the ALJ did not identify what "significant social limitations" or "poor memory and concentration" Plaintiff testified to and how such testimony was belied by the evidence.

Additionally, "treatment records must be viewed in light of the overall diagnostic record." *Ghanim*, 763 F.3d at 1164 (citation omitted). And the ALJ herself recognized that "exams noted the claimant occasionally had an anxious, depressed, or irritable mood and affect, as well as one evaluation noting impaired attention and concentration." ECF No. 7-1 at 35. Thus, the ALJ's cite to the objective medical evidence was not a specific, clear, and convincing reason to discount Plaintiff's testimony. *Ghanim*, 763 at 1164 (holding that treatment notes indicating that claimant was "upbeat," "smiling," and had "focused attention" did not contradict claimant's reported symptoms of depression and social anxiety).

* * *

Because the ALJ only made a general credibility finding and never identified *which* particular testimony she found not credible and never explained how the evidence contradicted that testimony, this error was not harmless as the ALJ did not provide enough reasoning for the Court to meaningfully review. *Brown-Hunter*, 806 F.3d at 494. Moreover, another ALJ crediting

Plaintiff's symptom testimony could have reached a different disability determination, likewise rendering the error not harmless. *Stout*, 454 F.3d at 1055–56.

### B.  Remand for further proceedings is the appropriate remedy

Plaintiff asks the Court to reverse and remand for a direct award of benefits because he contends that he meets the three requirements of the "credit-as-true" test. ECF No. 8 at 15–16. The Commissioner, however, requests that the Court remand the case for further proceedings because there is "serious doubt" that Plaintiff is disabled given inconsistencies in the record. ECF No. 10 at 13–14.

When an ALJ improperly rejects a claimant's symptom testimony without providing legally sufficient reasons, the court may grant a direct award of benefits when certain conditions are met. *Garrison*, 759 F.3d at 1019. The three-part analysis of such conditions is known as the "credit-as-true" test. *Id.* The credit-as-true test first asks (1) whether the ALJ failed to provide legally sufficient reasons for rejecting the claimant's testimony, and (2) whether there are outstanding issues that must be resolved and whether further administrative proceedings would be useful. *Id.* at 1020; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). When the first two conditions are satisfied, the court then credits the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability. *Treichler*, 775 F.3d at 1101. But even after reaching the third step and crediting the claimant's testimony as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings. *Id.* at 1101–02.

As explained above, the Court finds that at the first step, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony. At step two, the Court considers whether the record as a whole is free from conflicts, ambiguities, or gaps, and whether all factual issues have been resolved. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). And in considering the record, the Court finds that further administrative proceedings would be useful.

Plaintiff contends that because the ALJ posed a hypothetical to the vocational expert regarding missing two days of work a month or being off-task 15 percent of time, and the VE

testified that such an individual could not work, the record is complete. However, it is unclear which limitations the ALJ was accounting for in posing that hypothetical and Plaintiff too does not explain which limitations the question considers. As discussed above, the ALJ discredited Plaintiff's testimony, in part, because the record did not fully corroborate the extent of Plaintiff's migraines and his inability to remain seated. The ALJ also did not sufficiently explain which testimony regarding Plaintiff's mental health limitations was undermined by the objective medical evidence and how.

But questions remain as to these limitations. While the ALJ posed hypotheticals to the VE for a person who always required the use of a cane, she did not pose any hypotheticals regarding Plaintiff's ability or inability to sit for certain periods of time nor whether an individual with a certain frequency of migraines could work. And Plaintiff's potential mental health limitations likewise were not provided to the VE. This case therefore does not fit in with the category of cases in which the credit-as-true test was satisfied. *See, e.g.*, *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (vocational expert "specifically opined" about potential limitations); *Garrison*, 759 F.3d at 1022 (same); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (vocational expert testimony "clearly established" claimant could not perform any substantial gainful work).

Because further administrative proceedings are necessary, the Court need not reach the third step of the analysis. *Treichler*, 775 F.3d at 1107. But even if Plaintiff's testimony was credited, it is not clear that the ALJ would be required to find Plaintiff disabled given the gaps in the hypotheticals posed to the VE. *Leon v. Berryhill*, 880 F.3d 1041, 1048 (9th Cir. 2017). Because Plaintiff fails to satisfy the credit-as-true test, the Court remands the case for further proceedings.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reversal and/or Remand (ECF No. 8) is GRANTED consistent with this Order.

**IT IS FURTHER ORDERED** that the Commissioner's Cross-Motion to Affirm (ECF

No. 10) is DENIED.

**IT IS FURTHER ORDERED** that on remand, the ALJ consider the qualifications and limitations of Plaintiff's daily activities, Plaintiff's subjective symptom testimony, and any other part of the decision as necessary considering the updated record on remand, including Plaintiff's RFC and any hypotheticals given to the vocational expert.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of Plaintiff and close this case.

DATED this 27th day of August 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

18